**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-00366

TITLE RESOURCES GUARANTY COMPANY, a Texas Corporation,

     Plaintiff,

v.

AMERICAN TITLE SERVICES COMPANY, a Colorado corporation;
AMERICA'S HOME TITLE, LLC, a Colorado limited liability company;
AMERICAN TITLE CORP., a Colorado corporation;
ESTATE OF RICHARD TALLEY, a Colorado decedent;
CHERYL TALLEY, individually and in her capacity as successor to Richard Talley or
  representative for the Estate of Richard Talley;
BILL KRIEG, an individual;
GK PEAKVIEW TOWER, LLC, a Delaware limited liability company; and
CITYWIDE BANKS, a Colorado corporation,

     Defendants.

---

**VERIFIED COMPLAINT AND JURY DEMAND**

---

     Plaintiff Title Resources Guaranty Company ("TRGC") alleges the following against

Defendants:

**PRELIMINARY STATEMENT**

     TRGC pursues this action for, among other remedies, extraordinary and expedited relief

to prevent potential injury to residential real estate buyers, sellers, brokers, lenders and others

who may have fallen prey to the malfeasance of Defendants, American Title Services Company

("ATSC"), America's Home Title, LLC ("AHT"), American Title Corp. ("ATC") and Richard

Talley (collectively, the "RTalley Defendants"). The RTalley Defendants were in the business

of providing escrow and title insurance services to facilitate real property transactions and refinances in Colorado.  To that end, ATSC and AHT received funds related to real estate transactions.  These funds were entrusted to ATSC and AHT to hold in escrow and to only be used to pay off existing mortgage loans, mortgage taxes, homeowners' insurance premiums and other charges associated with real estate closings.  The RTalley Defendants failed to preserve the entrusted funds and misappropriated such funds for their benefit and to the detriment of TRGC and all those for whom ATSC and AHT held funds in trust.

The RTalley Defendants acted in blatant violation of their fiduciary duties, contractual obligations and statutory and common law, and have damaged TRGC's reputation and exposed TRGC to liability for the misappropriated funds.  The RTalley Defendants have injured innocent third parties who now face potential title issues arising out of the RTalley Defendants' failure to properly maintain, account for and disburse escrowed funds.

TRGC has intervened in an effort to assist with loan closings to mitigate the harm that real property sellers, buyers, brokers or lenders may suffer.  But as reported by the Denver Post at http://www.denverpost.com/news/ci_25081462/under-investigation-american-title-ceo-dead-grisly-suicide, Richard Talley ("RTalley") committed suicide and is under investigation.  Due to this unfortunate event, the files, computers and information TRGC and the Colorado Department of Regulatory Agencies, Division of Insurance (the "Division") need to help avoid further harm are at risk of being lost which could cause irreparable harm to TRGC's ability to mitigate the damage suffered by those who entrusted ATSC and AHT with their funds.  TRGC brings this action to stop the harm and damage being caused by the RTalley Defendants' fraudulent and unauthorized actions.

<u>P<small>ARTIES</small>, J<small>URISDICTION</small> A<small>ND</small> V<small>ENUE</small></u>

1.      TRGC is a Texas Corporation with its principal place of business located at 8111 LBJ Freeway, Suite 1200, Dallas, Texas 75251. TRGC is in the business of providing residential, commercial and timeshare title insurance, closing management services, and real estate closing services to customers throughout the United States.

2.      ATSC is a Colorado corporation with its principal place of business located at 6465 Greenwood Plaza Blvd., Suite 700, Centennial, CO 80111. ATSC has branch offices at:

      a.      13111 E. Briarwood Ave. #140, Centennial, CO 80112;

      b.      1112 Eagleridge Blvd., Pueblo, CO 81008;

      c.      1300 East Bridge St., Brighton, CO 80601;

      d.      1050 Walnut Street # 320, Boulder 80302;

      e.      12000 N. Pecos, Suite 300, Westminster, CO 80234;

      f.      300 Union Blvd, Suite 675, Lakewood, CO 80228;

      g.      11941 West 48th Ave, Suite 202, Wheat Ridge, CO 80033; and

      h.      3665 JFK Parkway, Bldg. 1, Suite 300, Fort Collins, CO 80525.

3.      AHT is a Colorado limited liability company with its principal place of business located at 13111 East Briarwood Ave., Suite 140, Centennial, CO 80112 and a principal mailing address of 6465 Greenwood Plaza Blvd., Suite 700, Centennial, CO 80111. All members of AHT are either Colorado residents or entities with principal places of business in Colorado.

4.      ATC is a Colorado corporation with its principal place of business located at 6465 Greenwood Plaza Blvd., Suite 700, Centennial, CO 80111. ATC is the registered agent for ATSC and AHT.

5.      Decedent RTalley's last known residence is 10935 E. Crestline Place, Englewood CO 80111.  RTalley was the registered agent for ATC.  Upon information and belief, RTalley committed suicide on February 4, 2014.

6.      Defendant Cheryl Talley ("CTalley") is RTalley's surviving wife.  CTalley resides at 10935 E. Crestline Place, Englewood CO 80111.  Upon information and belief CTalley is successor to RTalley or the personal representative for the estate of Richard Talley (the "Talley Estate").

7.      Bill Krieg ("Krieg") is a Colorado resident.  Krieg is the Controller for both ATSC and AHT.

8.      CTalley owned 55% of ATSC while RTalley owned 45% of ATSC.  The Talley Estate and CTalley are principals and officers of ATSC.

9.      ATC is owned by both RTalley and CTalley.  ATC owns 45% of AHT.  Through ATC, the Talley Estate and CTalley control the operations of AHT.

10.     Defendant GK Peakview Tower, LLC (the "Landlord") is a Colorado limited liability company who owns real property with the address of 6465 Greenwood Plaza Blvd., Suite 700, Centennial, CO 80111, which serves as the headquarters for ATSC.

11.     Defendant Citywide Banks ("Citywide") is a Colorado bank with a principal address of 10660 E. Colfax Ave., Aurora, CO 80010.  Citywide maintains the trust and operating accounts for ATSC and AHT.  Citywide also maintains an account used by ATSC and AHT to pay title insurance premiums (the "Premium Account").

        a.      The names of the "Trust Accounts" and the last three digits of the account numbers are:

(1)      ATS HUD Trust, Acct. No. *821;

(2)      ATS Retail Trust, Acct. No. *537; and

(3)      AHT Trust, Acct. No. *609.

b.      The names of the "Operating Accounts" and the last three digits of the account numbers are:

(1)      AHT Working, Acct. No. *617;

(2)      ATS Working, Acct. No. *547;

(3)      American Land Work, Acct. No. *596; and

(4)      American Title Corp, Acct. No. *590.

c.      The name of the Premium Account and the last three digits of its account number is Underwriter, Account No. *553.

12.      The Court has subject matter jurisdiction over this matter pursuant to 28 USC §1332(a)(1) because the action involves a dispute between citizens of different states and the amount in controversy exceeds $75,000.

13.      Venue is proper in this Court under 28 USC §1391(b) because a substantial part of the events giving rise to the claims made in this action occurred within this judicial district.

## GENERAL ALLEGATIONS

**A.    TRGC's Use of Title Agents**

14.      TRGC is a title insurance underwriter whose business includes issuing title insurance policies that insure owners and lenders against certain adverse claims and risks outlined in title insurance policies.  TRGC also issues, among other things, Insured Closing Letters and/or Closing Protection Letters that provide insurance for certain actions occurring at real estate closings involving TRGC title insurance.

15.     TRGC has developed a reputation for reliability and trustworthiness in the very competitive title insurance business by providing prompt, efficient and effective service.

16.     To assist in the operation of its business, TRGC enters into Issuing Agency Contracts with title insurance agents.

17.     These Issuing Agent Contracts authorize agents to issue, on TRGC forms, title insurance commitments, binders, guarantees, policies and endorsements in designated territories.

18.     Once the title agents provide TRGC with the information required to issue a title insurance policy, TRGC issues the policy.  The title agents then collect the premiums for the issued policy and are required to pay a portion of the premium to TRGC.

19.     As part of its efforts to issue title insurance policies, TRGC issues Closing Protection Letters and/or Insured Closing Letters that, among other things, provide assurance to lenders, purchasers and sellers that their title agents will hold trust funds in escrow and make disbursements in accordance with the terms of the Closing Protection Letters and/or Insured Closing Letters and the HUD-1 Settlement Statements.

20.     The Closing Protection Letters and/or Insured Closing Letters essentially provide coverage to lenders, purchasers and sellers during the temporary period leading up to the time that TRGC issues a title insurance policy.

21.     Lenders, purchasers and sellers rely upon these Closing Protection Letters and/or Insured Closing Letters in entrusting title agents to handle escrow funds and closing on transactions.

**B.     The TRGC-ATSC and TRGC-AHT Issuing Agent Contracts**

22.     On March 10, 2009, TRGC entered into Colorado Issuing Agency Contracts (the "Contracts") with both ATSC and AHT, whereby TRGC appointed ATSC and AHT to serve as TRGC's title insurance agents for real estate closing transactions in Colorado.

23.     Exhibit A is a copy of the ATSC Contract.  Exhibit B is a copy of the AHT Contract.

24.     Under the Contracts, ATSC and AHT had authority to issue TRGC title insurance commitments, policies, endorsements and Closing Protection letters.

25.     Pursuant to the Contracts, ATSC and AHT, among other things, were required to:

a.     Supply qualified personnel for the handling of business under the Contract.  Exs. A and B, § 3.B.

b.     Prepare, maintain and preserve a file for each application for title insurance, which includes all supporting documents which enable ATSC and AHT to issue such insurance (including but not limited to, affidavits, lien waivers, surveys, searches, examinations, and work sheets together with a copy of commitments, policies and endorsements issued), the title to which vests in TRGC should ATSC and AHT cease operations.  Exs. A and B, § 3.C.

c.     Keep all funds received from any source in connection with transactions in which TRGC's insurance is involved in escrow accounts separate and apart from ATSC's and AHT's personal or operating accounts, disburse said funds only for the purposes for which they are entrusted to ATSC and AHT and balance and reconcile all such accounts.  Exs. A and B, § 3.F.

       d.     Indemnify TRGC for any losses (including attorneys' fees and costs) incurred by TRGC as a result of ATSC's or AHT's (1) failure to comply with the terms of the Contracts or with TRGC rules, regulations or instructions, (2) loss or misapplication of customer funds, documents, or other things of value entrusted to ATSC or AHT, (3) failure to disburse properly or close in accordance with escrow and/or closing instructions, and/or (4) misappropriation of escrow or closing funds.  Exs. A and B, §§ 6.C. and 6.D.

26.     Further, upon the discovery of a shortage of funds in ATSC's or AHT's Trust Accounts, TRGC receives a lien on all property of ATSC or AHT as security for repayment. Exs. A and B, § 8.

## C.     Irregularity in ATSC's and AHT's Accounts.

27.     In January 2014, as part of its agent audit and review procedures,  TRGC determined that some ledger entries in reports provided by RTalley and Krieg appeared to be altered to create the facade of balanced Trust Accounts, when in reality, ATSC and AHT likely carried insufficient funds in the Trust Accounts to meet all of the their escrow obligations.

28.     Soon thereafter, TRGC demanded an onsite audit of ATSC's and AHT's records during the week of February 3, 2014.

29.     On February 3, 2014, TRGC's audit team, headed by its Audit Manager, Al Thacker, arrived at ATSC's offices.  TRGC personnel demanded ATSC and AHT create financial reports from their accounting system, while TRGC personnel observed the creation of the reports.

30.     This process generated reports which appeared to show that ATSC had large negative balances in its Trust Accounts.

31.     When TRGC demanded further information, RTalley responded by informing TRGC that ATSC and AHT would cease serving as TRGC's agent as of Friday, February 7 because he felt that TRGC did not "trust" him.

32.     On Tuesday, February 4, 2014, TRGC's audit team asked Krieg to produce disbursement information to better understand the state of the Trust Accounts.  Krieg refused to produce all of the requested disbursement information.  TRGC then requested a meeting with RTalley.

33.     RTalley never met with TRGC.  Upon information and belief, RTalley committed suicide that same day.

**D.     Misuse of Trust Accounts.**

34.     On February 5, 2014, TRGC's Audit Manager met with Krieg and again asked him to provide disbursement information related to the Trust Accounts.

35.     Krieg refused to produce the disbursement information but admitted that RTalley Defendants had misappropriated funds from the Trust Accounts.

36.     Krieg further admitted that (a) ATSC and AHT lacked the funds needed to satisfy their escrow obligation or to maintain their daily operations; (b) ATSC and AHT had transferred funds out of the Trust Accounts to pay insurance premiums and to pay operating expenses; (c) he was aware of these transfers and similar transfers had occurred in the past; and (d) he was aware that RTalley had transferred the funds out of the Trust Accounts for purposes other than satisfying escrow obligations.

37.     Krieg made no effort to prevent the misappropriation of the funds in the Trust Accounts even though he knew these funds were entrusted to ATSC and AHT for the sole purpose of satisfying only escrow obligations.

38.     Upon information and belief, RTalley misappropriated funds in the Trust Accounts knowing that such misappropriations would leave ATSC and AHT without the ability to satisfy their escrow obligations.

39.     Upon information and belief, funds were transferred from the Trust Accounts when ATSC and AHT were insolvent.

40.     Upon information and belief, the RTalley Defendants transferred funds from the Trust Accounts to RTalley for his and CTalley's benefit, such as to pay for the real property of the Talley Estate and/or CTalley's, including but not limited to residences in Colorado and Indiana.

**E.      Risk of Harm to Sellers, Buyers and Lenders.**

41.     As of February 7, 2014, ATSC and AHT have stopped paying the wages of their employees.

42.     On February 7, 2014, the Landlord served ATSC with a demand for ATSC to either pay the Landlord $41,164.82 in past due rent or for ATSC to move out of 6465 Greenwood Plaza Blvd., Suite 700, Centennial, CO 8011 by <u>February 12, 2014</u>.  Exhibit C, a copy of the Demand for Compliance or Possession.

43.     ATSC and AHT have ceased, or will soon cease, daily operations.

44.     In an attempt to facilitate closings involving TRGC title insurance policies, TRGC has attempted to access all of the Trust and Operating Accounts maintained at Citywide.

45.     The Contracts grant TRGC a lien on all of ATSC's and AHT's property due to the shortages in the Trust Accounts.

46.     TRGC does not have full access and control to the Trust Accounts or Operating Accounts and cannot obtain such without a Court Order.

47.     Upon information and belief, ATSC, AHT, ATC, the Talley Estate and CTalley still have access to and the ability to withdraw funds out of the Trust Accounts, the Operating Accounts and the Premium Account ("Citywide Accounts").  The Trust Account funds were entrusted to the RTalley Defendants to hold in escrow and are only to be used to pay off existing mortgage loans, mortgage taxes, homeowners' insurance premiums and other charges associated with the real estate closings.  TRGC is concerned that ATSC, AHT, ATC, the Talley Estate or CTalley may attempt to access the Citywide Accounts to further withdraw funds unrelated to escrow obligations to buyers, sellers and lenders.

48.     TRGC must have access to title insurance files so it can identify what escrow obligations remain outstanding, assess whether it can assist in closing real estate transactions involving TRGC title insurance, and to determine what checks/wires will be recognized and funded by Citywide in order to protect lenders, borrowers, and sellers.

49.     However, due to the eviction process commenced by the Landlord, TRGC may lose access to title insurance files, computers and information needed to help ATSC and AHT fulfill their escrow obligations.

50.     On or about February 5, 2014, TRG alerted the Division of RTalley's suicide. The Division has initiated its own investigation into the operations of ATSC and AHT.

51.     The Division has informed TRG that RTalley's death raises concerns that the confidential, sensitive, private and financial information regarding buyers, sellers and lenders may be irretrievably lost or exposed to the public.

52.     The Division has asked TRGC to initiate this action and to obtain a temporary restraining order or preliminary injunction to safeguard all accounts, computers and consumer information.  If preliminary and extraordinary relief is not granted, TRGC may suffer irreparable harm to its reputation.

53.     Upon information and belief, on Monday, February 10, 2014, CTalley entered the ATSC office located at 6465 Greenwood Plaza Blvd., Suite 700, Centennial, CO 80111, and removed items from the former office of RTalley, including ATSC's operating bank statements.

## COUNT I
### (Injunctive Relief Against all Defendants)

54.     TRGC incorporates herein all previous allegations.

55.     ATSC, AHT and ATC were mere alter egos of RTalley.

56.     RTalley Defendants misappropriated monies in violation of the Contracts, and/or in violation of the representations in the HUD-1 statements for closings it handled and/or in violation of the laws of the State of Colorado.

57.     Upon information and belief, on February 10, 2014, CTalley entered the ATSC office and removed items from the former office of RTalley, including ATSC's operating bank statements.

58.     As a result of RTalley Defendants' acts or omissions, TRGC is suffering and will continue to suffer the following immediate and irreparable injuries:

a.      TRGC's reputation has been and is being damaged in the industry as a result of RTalley Defendants' conduct;

b.      TRGC is exposed to and continues to run the risk of exposure to claims resulting from RTalley Defendants' conduct; and

c.      Innocent homeowners are subject to potential foreclosure actions, harm to their credit ratings, and disclosure of private, sensitive, personal and financial information, which could result in additional claims against TRGC.

59.     TRGC is entitled to specific performance of the terms of the Contracts, including an immediate accounting of the Trust Accounts.

60.     TRGC is also entitled to equitable relief, including:

a.      Freezing of assets of the RTalley Defendants, the Talley Estate and CTalley;

b.      Compelling Citywide to provide TRGC full access to the Trust Accounts;

c.      Compelling Citywide to provide TRGC all records that relate to the Citywide Accounts, including but not limited to operating statements and escrow positive pay files for checks presented for payment;

d.      Freezing the Operating Accounts;

e.      Enjoining all Defendants from accessing the Premium Account;

f.      Prohibiting RTalley Defendants, the Talley Estate and CTalley from selling, disposing of, or in any way transferring any assets;

   g. Compelling the Landlord to provide TRGC with access to all ATSC, AHT and ATC offices to allow TRGC to locate and preserve all information related to pending closings involving TRGC; and

   h. Enjoining Defendants from preventing TRGC from obtaining all files, computers and information from ATSC's, AHT's and ATC's offices pending further Order of this Court.

  61. Greater injury will result to TRGC and the public from the denial of the injunction than will result to Defendants by the granting of an injunction.

  62. TRGC has no adequate remedy at law and unless it obtains immediate equitable relief, it will continue to suffer irreparable harm.  The Division agrees and supports the grant of such equitable relief.

  WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against the Defendants as follows:

   a. For a temporary restraining order and preliminary and permanent injunction:

    (1) Compelling Citywide to provide TRGC full access to the Trust Accounts and freezing the Operating Accounts;

    (2) Compelling Citywide to provide TRGC all records that relate to the Citywide Accounts, including but not limited to operating statements and escrow positive pay files for checks presented for payment;

    (3) Prohibiting the RTalley Defendants, the Talley Estate and CTalley from accessing the Citywide Accounts;

(4)     Granting TRGC access to and possession of all files, computers and information from ATSC's, AHT's and ATC's offices pending further Order of this Court;

(5)     Enjoining Defendants from interfering with TRGC's efforts to obtain possession and control of all files, computers, computer servers and information from ATSC's, AHT's and ATC's offices;

(6)     Requiring RTalley Defendants to provide an immediate accounting to TRGC with regard to the disbursement, handling and/or location of the misappropriated funds;

(7)     Enjoining RTalley Defendants, from paying any check drawn upon or otherwise removing or disbursing any funds from the Premium Account;

(8)     Enjoining Defendants from interfering with TRGC paying any check drawn upon or otherwise removing or disbursing any funds from the Premium Account; and

(9)     Prohibiting the RTalley Defendants and CTalley from engaging in or holding themselves out as engaging in any activity or business on behalf of TRGC or soliciting, servicing, and writing title insurance business on TRGC's behalf or otherwise engaging in any business as issuing agent for TRGC.

b.      For immediate access to all records and files associated with any transaction ATSC or AHT handled on behalf of or in connection with TRGC;

c.      Granting TRGC the right to immediately conduct depositions, serve written discovery and serve subpoenas for documents and/or depositions regarding the funds and transfers made from and to all accounts belonging to ATSC, AHT, RTalley and CTalley;

      d.      Awarding TRGC attorneys' fees and costs as provided for by contract and/or applicable authority; and

      e.      For such other and further relief as this Court deems just and proper.

## COUNT II
### (Breach of Contract Against ATSC and AHT)

63.      TRGC incorporates herein all previous allegations.

64.      TRGC entered into the Contracts with ATSC and AHT.

65.      ATSC and AHT breached the Contracts by, among other things:

      a.      Failing to maintain adequate files and records;

      b.      Failing to pay TRGC the title insurance premiums;

      c.      Withdrawing funds from the Escrow Accounts for the sole benefit of RTalley Defendants and CTalley; and

      d.      Transferring funds from the Escrow Accounts to pay operating expenses.

66.      TRGC fulfilled all of its obligations under the Contracts.

67.      As a direct and proximate result of the breaches, TRGC has and will suffer irreparable harm and other damages in an amount to be proven at trial.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against ATSC and AHT as follows:

      a.      For immediate access to all records and files associated with any transaction ATSC and AHT handled on behalf of or in connection with TRGC;

      b.      Awarding TRGC compensatory damages;

      c.      Pre- and post-judgment interest;

   d. Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority;

   e. For a temporary restraining order and preliminary and permanent injunction prohibiting ATSC and AHT from engaging or holding itself out as engaging in any activity or business on behalf of TRGC or soliciting, servicing, and writing title insurance business on TRGC's behalf or otherwise engaging in any business as issuing agent for TRGC; and

   f. For such other and further relief as this Court deems just and proper.

## COUNT III
### (Breach of Fiduciary Duty Against ATSC and AHT)

68. TRGC incorporates herein all previous allegations.

69. As a result of their relationship with TRGC, ATSC and AHT owed TRGC a fiduciary duty.

70. As a result of the parties' relationship, the Defendants were entrusted with funds and, with respect to those funds, were required to place TRGC's interest before their own.

71. Defendants' misappropriation of the aforementioned funds constituted a breach of its fiduciary duty to TRGC.

72. Defendants' misconduct was willful and wanton and reckless in complete disregard of TRGC's rights.

73. As a direct and proximate result of Defendants' breach, TRGC has and will suffer irreparable harm and other damages in an amount to be proven at trial.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Defendants as follows:

      a.      For a preliminary injunction requiring Defendants to provide an immediate accounting to TRGC with regard to the disbursement, handling and/or location of the misappropriated funds;

      b.      For immediate access to all records and files associated with any transaction ATSC and AHT handled on behalf of or in connection with TRGC;

      c.      Awarding TRGC compensatory damages;

      d.      Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority;

      e.      For a temporary restraining order and preliminary and permanent injunction prohibiting ATSC and AHT from engaging or holding themselves out as engaging in any activity or business on behalf of TRGC or soliciting, servicing, and writing title insurance business on TRGC's behalf or otherwise engaging in any business as issuing agent for TRGC; and

      f.      for such other and further relief as this Court deems just and proper.

## COUNT IV
### (Accounting Against RTalley Defendants, the Talley Estate and CTalley)

74.      TRGC incorporates herein all previous allegations.

75.      ATSC and AHT had both contractual and fiduciary duties to TRGC to properly close transactions and disburse funds.

76.      The misappropriation of the aforementioned funds by the RTalley Defendants and CTalley constituted a breach of their respective duties to TRGC and TRGC's rights under the Contract.

77.     TRGC has an equitable interest in the misappropriated funds in terms of its duty to protect the owners of property from the potential claims of multiple third parties that may arise from Defendants' misappropriation of escrow funds.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Defendants as follows:

a.      For a preliminary injunction requiring ATSC, AHT, the Talley Estate and CTalley to provide an immediate accounting to TRGC with regard to the disbursement, handling and/or location of the misappropriated funds;

b.      For a temporary restraining order and preliminary and permanent injunction enjoining Defendants from paying any check drawn upon or otherwise removing or disbursing any funds from Citywide Accounts or bank accounts in the name of ATSC, AHT, RTalley, the Talley Estate and CTAlley;

c.      Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority; and

d.      For such other and further relief as this Court deems just and proper.

### COUNT V
### (Negligence Against ATSC, AHT, RTalley, CTalley and Krieg)

78.     TRGC incorporates herein all previous allegations.

79.     ATSC, AHT, RTalley, CTalley and Krieg owed duties to TRGC to conduct the operations of ATSC and AHT with the standard of care recognized in the title insurance industry and to safeguard funds entrusted in their care.

80.     Defendants, ATSC, AHT, RTalley, CTalley and Krieg, failed to conduct the operations of ATSC and AHT consistent with the standard of care in the title insurance industry

and otherwise breached their duties by the actions and omissions set forth above including, but not limited to:

a.      Failing to have prudent and sufficient procedures in place, and to otherwise act, to accurately record and monitor the disbursement of proceeds from the Trust Accounts and the Premium Account;

b.      Failing to place appropriate controls on its escrow settlement trust accounts and on trust funds entrusted to their care;

c.      Failing to properly and prudently monitor and manage their escrow settlement trust accounts;

d.      Failing to take prudent steps to protect against theft and defalcation;

e.      Failing to properly monitor and supervise their employees or agents;

f.      Failing to take other steps reasonably or customarily taken by title agents to protect escrow funds and the interests of their principals; and

g.      Failing to properly collect and disburse funds in connection with closings it handled.

81.      The actions and omissions of ATSC, AHT, RTalley and CTalley constitute negligence and are the direct and proximate cause of injury and harm to TRGC.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Defendants as follows:

a.      For a preliminary injunction requiring ATSC, AHT, the Talley Estate, CTalley and Krieg to provide an immediate accounting to TRGC with regard to the disbursement, handling and/or location of the misappropriated funds;

b.      For a temporary restraining order and preliminary and permanent injunction enjoining Defendants, from paying any check drawn upon or otherwise removing or disbursing any funds from bank accounts in the name of ATSC, AHT, the Talley Estate, RTalley or CTalley;

c.      Awarding TRGC compensatory damages in an amount to be proven at trial;

d.      Pre- and post-judgment interest;

e.      Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority; and

f.      For such other and further relief as this Court deems just and proper.

## COUNT VI
### (Unjust Enrichment Against the Talley Estate and CTalley)

82.     TRGC incorporates herein all previous allegations.

83.     Upon information and belief, RTalley and CTalley have taken monies from the settlement escrow accounts for their own use and benefit, to the detriment of TRGC and innocent third parties.

84.     By taking or receiving the monies, Defendants have been unjustly enriched and allowing Defendants to retain such funds would be unjust and inequitable.

85.     The Court must require the Talley Estate and CTalley to pay any monies that they took from the Trust Accounts for their own use and benefit.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Defendants as follows:

a.      For a preliminary injunction requiring the Talley Estate and CTalley to provide an immediate accounting to TRGC with regard to the disbursement, handling and/or location of the misappropriated funds;

b.      For a temporary restraining order and preliminary and permanent injunction enjoining the Talley Estate and CTalley, from paying any check drawn upon or otherwise removing or disbursing any funds from the Citywide Accounts and bank accounts in the name of RTalley, the Talley Estate and CTalley;

c.      Awarding TRGC compensatory damages to be proven at trial;

d.      Pre- and post-judgment interest;

e.      Awarding TRGC attorneys fees and costs as provided for in the Contract and applicable authority; and

f.      For such other and further relief as this Court deems just and proper.

## COUNT VII
### (Civil Theft Against ATSC, AHT, the Talley Estate and CTalley)

86.     TRGC incorporates herein all previous allegations.

87.     ATSC, AHT, RTalley and CTalley intentionally exercised dominion over funds in the Trust Accounts.

88.     With willful and wanton disregard of the interests of TRGC and innocent parties in the Trust Accounts, ATSC, AHT, RTalley and CTalley obtained control over the Trust Accounts with the specific intent to permanently deprive TRGC and innocent parties of those funds.

89.     Their actions have caused damages to TRGC in an amount to be proven at trial.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Defendants as follows:

a.      For a preliminary injunction requiring ATSC, AHT, the Talley Estate and CTalley to provide an immediate accounting to TRGC with regard to the disbursement, handling and/or location of the misappropriated funds;

b.      For a temporary restraining order and preliminary and permanent injunction enjoining ATSC, AHT, the Talley Estate or CTalley from paying any check drawn upon or otherwise removing or disbursing any funds from bank accounts in the Defendants' name;

c.      Awarding TRGC damages in an amount to be proven at trial;

d.      Pre- and post-judgment interest;

e.      Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority; and

f.      For such other and further relief as this Court deems just and proper.

## COUNT VIII
### (Conversion Against ATSC, AHT, the Talley Estate and CTalley)

90.     TRGC incorporates herein all previous allegations.

91.     ATSC, AHT, RTalley and CTalley converted and misapplied funds held in the Trust Accounts for their own use and benefit.

92.     The monies were entrusted to ATSC and AHT for the purpose of paying specific obligations of the parties so entrusting the monies and they had no legal or equitable interest in such funds.

93.     The conversion of the trust funds is wrongful as a matter of law.

94.     TRGC has sustained and anticipates it will sustain damages as a result of the conversion and misappropriation of the escrow settlement trust funds.

95.     TRGC is entitled to an award of damages as a result of the willful, wanton and reckless conduct of ATSC, AHT, the Talley Estate and CTalley.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Defendants as follows:

a.     For a preliminary injunction requiring ATSC, AHT, the Talley Estate and CTalley to provide an immediate accounting to TRGC with regard to the disbursement, handling and/or location of the misappropriated funds;

b.     For a temporary restraining order and preliminary and permanent injunction enjoining ATSC, AHT, the Talley Estate or CTalley from paying any check drawn upon or otherwise removing or disbursing any funds from bank accounts in the Defendants' name;

c.     Awarding TRGC damages in an amount to be proven at trial;

d.     Pre- and post-judgment interest;

e.     Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority; and

f.     For such other and further relief as this Court deems just and proper.

## <u>COUNT IX</u>
**(Violation of the Colorado Uniform Fraudulent Transfer Act, C.R.S. §§ 38-8-101, *et seq.*, Against ATSC, AHT, the Talley Estate and CTalley)**

96.     TRGC incorporates herein all previous allegations.

97.     ATSC and AHT transferred funds out of the Trust Accounts and insurance policy premium payments to themselves, RTalley and, upon information and belief, CTalley for purposes unrelated to escrow obligations or premium payments.

98.     At the times of these transfers, TRGC was ATSC's and AHT's creditor and they made the transfer:

    a.     With actual intent to hinder, delay, or defraud TRGC;

    b.     Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the remaining assets of ATSC and AHT were unreasonably small in relation to their business;

    c.     Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and ATSC and AHT knew that their resultant circumstances would leave them unable to meet their escrow obligations;

    d.     Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and at a time when ATSC and AHT was insolvent; or

    e.     To insiders, RTalley and/or CTalley at a time when ATSC and AHT was insolvent.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against ATSC, AHT, ATC, the Talley Estate and CTalley as follows:

    a.     Avoidance of all fraudulent transfers;

    b.     An attachment or other provisional and equitable remedies against the transferred funds including the imposition of a constructive trust on all transactions using funds fraudulently transferred from the Trust Accounts;

   c.  An injunction against further disposition by ATSC, AHT, ATC the Talley Estate and CTalley of the transferred assets;

   d.  Appointment of a receiver to take charge of the assets transferred or of other property of the transferee;

   e.  Awarding TRGC damages in an amount to be proven at trial;

   f.  Pre- and post- judgment interest;

   g.  Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority; and

   h.  For such other and further relief as this Court deems just and proper.

**<u>COUNT X</u>**
**(Civil Conspiracy Against Krieg, the Talley Estate and CTalley)**

99. TRGC incorporates herein all previous allegations.

100. With willful and wanton disregard of the rights of TRGC, real estate buyers, sellers and lender, Krieg, RTalley and CTalley agreed, by words and conduct, to misappropriate the funds in the Trust Accounts.

101. As already alleged, Krieg, RTalley and CTalley performed one or more of overt acts to accomplish the following: breach of contract, breach of fiduciary duties, civil theft, and conversion.

102. The actions of Krieg, RTalley and CTalley caused TRGC to suffer damages.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Krieg, the Talley Estate and CTalley as follows:

   a.  Awarding TRGC damages in an amount to be proven at trial;

   b.  Pre- and post- judgment interest;

      c.      Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority; and

      d.      For such other and further relief as this Court deems just and proper.

<u>**COUNT XI**</u>
**(Aiding and Abetting the Breach of Fiduciary Duty and Fraudulent Conveyances Against Krieg, the Talley Estate and CTalley)**

103.     TRGC incorporates herein all previous allegations.

104.     RTalley Defendants breached their fiduciary duties owed to TRGC and to innocent parties.

105.     With willful and wanton disregard of the rights of TRGC and real estate buyers, sellers and lenders, Krieg, RTalley and CTalley, knowingly provided substantial assistance to these breaches.

106.     The actions of Krieg, RTalley and CTalley caused TRGC to suffer damages.

WHEREFORE, TRGC respectfully requests that judgment be entered in its favor and against Defendants as follows:

      a.      Awarding TRGC damages in an amount to be proven at trial;

      b.      Pre- and post- judgment interest;

      c.      Awarding TRGC attorneys fees and costs as provided for by contract and/or applicable authority; and

      d.      For such other and further relief as this Court deems just and proper.

## JURY DEMAND

TRG DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

DATED this 10th day of February, 2014

By: *s/Byeongsook Seo*
    Byeongsook Seo
    Nicole Salamander Irby
    Gordon & Rees LLP
    555 17th Street, Suite 3400
    Denver, CO 80202
    Phone:  303.534.5160
    bseo@gordonrees.com
    nsalamanderirby@gordonrees.com

    *ATTORNEYS FOR PLAINTIFF TITLE RESOURCES
      GUARANTY COMPANY*

## VERIFICATION

I, Scott McCall, hereby declare that I am the Chief Executive Officer of Title Resources Guaranty Company and that I am authorized to make this verification for and on behalf of TRGC.  I have read the foregoing Verified Complaint and based on my review of corporate business records in TRGC's possession and based on discussions with TRGC's employees, I know the factual allegations set forth therein and the documents attached thereto are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Scott McCall

Dated:  February 10, 2014